# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **WRIGHT ASPHALT PRODUCTS CO., LLC** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **CASE NO:  4:09-cv-1145 LHR** |
| | § | |
| **v.** | § | **JURY TRIAL DEMAND** |
| | § | |
| **PELICAN REFINING CO., LLC** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT PELICAN'S MOTION FOR LEAVE TO AMEND ITS ORIGINAL ANSWER AND COUNTERCLAIM

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

**Scott D. Marrs**
FID No. 13605
State Bar No. 13013400
1300 Post Oak Blvd, Ste. 2500
Houston, Texas 77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile
smarrs@bmpllp.com

**ATTORNEY IN CHARGE FOR DEFENDANT/COUNTER-PLAINTIFF PELICAN REFINING CO., LLC**

**OF COUNSEL:**

BEIRNE, MAYNARD & PARSONS, L.L.P.
**William C. Norvell, Jr**.
FID No. 6755
State Bar No. 15113000
wnorvell@bmpllp.com
**Sean P. Milligan**
FID No. 705815
State Bar No. 24055978
smilligan@bmpllp.com
1300 Post Oak Blvd, Ste. 2500
Houston, Texas 77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................... iii

INDEX OF AUTHORITIES.........................................................................vi

I.    LEAVE TO AMEND PLEADINGS SHOULD BE FREELY
GRANTED ..................................................................................1

II.    THE COURT'S SCHEDULING ORDER SPECIFICALLY
PROVIDES FOR A MOTION FOR LEAVE TO AMEND TO ADD
COUNTS AND CLAIMS AS REQUESTED HEREIN .............................2

III.    UNDER THE FEDERAL CIRCUIT'S RECENT EXERGEN CORP.
HOLDING, A DEFENDANT CANNOT SATISFY FEDERAL RULE
9(b) PLEADING REQUIREMENTS FOR ALLEGING
INEQUITABLE CONDUCT UNLESS AND UNTIL SPECIFIC
FACTS ARE IDENTIFIED ..........................................................2

IV.    IF THIS MOTION IS GRANTED, THERE WILL BE NO
PREJUDICE TO PLAINTIFF; DISCOVERY IS STILL ONGOING;
THE SCHEDULING ORDER SPECIFICALLY PROVIDES FOR
RE-SETTING OF KEY EVENTS AND CUT-OFF DATES,
SHOULD THE COURT'S DECISION UNDER MARKMAN BE
"LATE"....................................................................................3

V.    IN VIEW OF RECENTLY PRESERVED TESTIMONY EVIDENCE,
THIS MOTION FOR LEAVE IS TIMELY...............................................3

VI.    THE "WHO" OF THE MATERIAL MISREPRESENTATIONS ..............4

    A.   RUTH N. MORDUCH - alone, and in conspiracy with
Neste/Wright Asphalt Products, Co., through its employee, Mr.
Theodore Flanigan..................................................................4

    B.   THEODORE P. FLANIGAN...............................................4

VII.    THE "WHAT" OF THE MATERIAL MISREPRESENTATIONS............5

    A.   MATERIAL MISREPRESENTATION #1:
MISREPRESENTATIONS REGARDING THE OLIVER '464
PRIOR ART PATENT.................................................................5

1.    THE DECEIVING STATEMENT IN THE '818 PATENT APPLICATION REGARDING THE RELEVANCE OF OLIVER '464 PATENT ............................................................6

2.    THE REPEATING OF THIS STATEMENT IN THE INFORMATION DISCLOSURE STATEMENT .....................6

3.    FURTHER MISSTATEMENTS ABOUT THE RELEVANCE OF THE OLIVER '464 PATENT MADE IN RESPONSE TO THE OFFICE ACTION ............................8

4.    WHAT MS. MORDUCH FAILED TO TELL THE EXAMINER ABOUT THE OLIVER '464 PATENT ..............8

5.    THE SAME MISLEADING STATEMENT ABOUT THE OLIVER '464 PATENT WAS REPEATED IN THE TEXT OF THE SECOND PATENT-IN-SUITE ..................................9

6.    THE OLIVER '464 PATENT IS A "MATERIAL" REFERENCE ...........................................................................9

7.    A PATTERN OF MISLEADING CONDUCT HAS BEEN ESTABLISHED .....................................................................10

B.    MATERIAL MISREPRESENTATION #2: MISREPRESENTATIONS REGARDING THE YAN, ET. AL. '554 PRIOR ART PATENT ...............................................................10

1.    WHAT MS. MORDUCH TOLD THE EXAMINER ABOUT THE YAN '554 PATENT .........................................10

2.    WHAT MS. MORDUCH FAILED TO TELL THE EXAMINER ABOUT THE YAN ET. AL. '554 PATENT .....11

C.    MATERIAL MISREPRESENTATION #3: MISREPRESENTATIONS REGARDING THE HUFF '049 PRIOR ART PATENT. ....................................................................12

1.    WHAT MS. MORDUCH TOLD THE EXAMINER ABOUT THE HUFF '049 PATENT .........................................12

D.    MATERIAL MISREPRESENTATION #4: MISREPRESENTATIONS ABOUT THE PRIOR ART

COMPOSITIONS NOT BEING "HOMOGENEOUS", OR "FULLY INCORPORATED" AND "STABLE". .............................13

    1.   MS. MORDUCH TOLD THE EXAMINER THAT THE COMPOSITION OF THE '818 PATENT WAS "SUPERIOR" OVER THE PRIOR ART, BUT HAD NO EVIDENCE TO PROVE IT. ....................................................14

    2.   MS. MORDUCH REPRESENTED TO THE EXAMINER THAT THE COMPOSITION OF THE '818 PATENT WAS AN 'INCORPORATED AND STABLE', HOMOGENEOUS COMPOSITION; BUT HAD NEVER SEEN THE '818 PRODUCT AND DID NOT KNOW OF ANY TESTING OF IT TO PROVE SUCH PHYSICAL PROPERTIES. .......................................................................14

VIII.  THE "WHERE" OF THE MATERIAL REPRESENTATIONS: ANOTHER PATTERN OF INEQUITABLE CONDUCT .......................16

IX.    THE "WHEN" OF THE MATERIAL REPRESENTATIONS ................16

X.     THE "HOW" OF THE MATERIAL REPRESENTATIONS ...................16

XI.    A PATTERN OF MATERIAL NON-DISCLOSURES AND AFFIRMATIVE MISREPRESENTATIONS IS SUFFICIENT TO PROVE INTENT........................................................................................17

CONCLUSION ...................................................................................................18

CERTIFICATE OF SERVICE ..........................................................................20

# INDEX OF AUTHORITIES

## Cases

*A.B. Dick Co. v. Burroughs Corp.*,
617 F. Supp. 1382 (N.D. Ill. 1985).......................................................................18

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
120 F.3d 1253 (Fed. Cir. 1997) ...........................................................................17

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*,
629 F. Supp. 2d 416 (D.N.J. 2009).......................................................................18

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ........................................................................3, 4

*Foman v. Davis*,
371 U.S. 178 (1962) ...............................................................................................1

*Jacobsen v. Osborne*,
133 F.3d 315 (5th Cir. 1998) .................................................................................2

*Lowrey v. Texas A & M University System*,
117 F.3d 242 (5th Cir. 1997) .................................................................................1

*Nisus Corp. v. Perma-Chink Systems, Inc.*,
2006 WL 2128903 (E.D. Tenn. July 27, 2006)....................................................18

*Paragon Pdiatry Lab., inc. v. KLM Labs., Inc.*,
984 F.2d 1182 (Fed. Cir. 1993) ...........................................................................18

*Udoewa v. Plus4 Credit Union*,
2010 WL 1169963 (S.D. Tex. March 23, 2010) .....................................................2

*WesternGeco v. Ion Geophysical Corp.*,
2009 WL 3497123 (S.D. Tex. Oct. 28, 2009).........................................................3

## Rules

FED. R. CIV. P. 15(a)..........................................................................................1, 2

FED. R. CIV. P. 5(d)............................................................................................22

**DEFENDANT PELICAN'S MOTION FOR LEAVE TO AMEND ITS
ORIGINAL ANSWER AND COUNTERCLAIM**

Defendant Pelican Refining Co., LLC ("Pelican" or "Defendant") hereby moves for leave to amend its pleadings to add: (1) a count specifically alleging **inequitable conduct** and conspiracy to commit fraud in the patent office, rendering both of the patents-in-suit unenforceable; (2) a request for a finding by this Court of **exceptional case** based thereon; (3) a request for an award of treble its damages proven;  (4) a request for an award by this Court of its reasonable attorneys' fees and costs incurred in this cause; and (5) a further particularization of its unfair competition counterclaim.

## I.  LEAVE TO AMEND PLEADINGS SHOULD BE FREELY GRANTED

In the Fifth Circuit, a motion to amend pleadings should be freely granted, in the interest of justice. FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit holds that Rule 15(a) evinces a liberal amendment policy. *See, e.g., Lowrey v. Texas A & M University System*, 117 F.3d 242, 245 (5th Cir. 1997). A motion to amend under Rule 15(a), therefore, should not be denied unless there is a substantial reason to do so. *Jacobsen v. Osborn*e, 133 F.3d 315, 318 (5th Cir. 1998).

This Court has granted leave to amend pleadings when the amendment was based on deposition testimony clarifying the factual basis of the claims. *See*

*Udoewa v. Plus4 Credit Union*, 2010 WL 1169963, *3 (S.D. Tex. March 23, 2010) (J. Rosenthal). As set forth below, Pelican's Motion for Leave to Amend is based in part on recently obtained deposition testimony proving inequitable conduct in the procurement of the patents-in-suit.

**II.      THE COURT'S SCHEDULING ORDER SPECIFICALLY PROVIDES FOR A MOTION FOR LEAVE TO AMEND TO ADD COUNTS AND CLAIMS AS REQUESTED HEREIN**

This Court's Scheduling Order (Docket #21) specifically provides a final date of March 19, 2010, for amendment of pleadings on inequitable conduct, *__without__* leave of Court. Thereafter, a motion for leave to amend must be filed.

**III.     UNDER THE FEDERAL CIRCUIT'S RECENT EXERGEN CORP. HOLDING, A DEFENDANT CANNOT SATISFY FEDERAL RULE 9(b) PLEADING REQUIREMENTS FOR ALLEGING INEQUITABLE CONDUCT UNLESS AND UNTIL SPECIFIC FACTS ARE IDENTIFIED**

In *Exergen*, the Federal Circuit held that "in pleading inequitable conduct in patent cases, [Federal] Rule 9(b) requires identification of the **specific who, what, when, where, and how** of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) (emphasis added); *see also WesternGeco v. Ion Geophysical Corp.*, 2009 WL 3497123, *7 (S.D. Tex. Oct. 28, 2009) (J. Ellison). Accordingly, Pelican specifically stated in its original answer and counterclaim that it "hereby reserves the right to plead the affirmative defense of inequitable conduct **subsequent to**

2

**applicable discovery**." (Pelican's Original Answer and Counterclaim, p. 7) (emphasis added).

**IV.   IF THIS MOTION IS GRANTED, THERE WILL BE NO PREJUDICE TO PLAINTIFF; DISCOVERY IS STILL ONGOING; THE SCHEDULING ORDER SPECIFICALLY PROVIDES FOR RE-SETTING OF KEY EVENTS AND CUT-OFF DATES, SHOULD THE COURT'S DECISION UNDER MARKMAN BE "LATE"**

As currently set forth in this Court's Scheduling Order, the cut-off date for discovery is December 31, 2010. Furthermore, the Scheduling Order specifically provides that, should this Court's Markman Ruling be "late," *i.e.*, rendered after August 16, 2010, the parties may request a re-setting of key events and cut-off dates to correspond to the amount of the "late" time for the Markman Order. Both parties have agreed to exercise this provision, thus giving the parties even more time for discovery of all issues, including a newly added count of inequitable conduct and conspiracy to commit fraud in the Patent Office. Plaintiff Wright will not be prejudiced by the granting of this motion.

**V.   IN VIEW OF RECENTLY PRESERVED TESTIMONY EVIDENCE, THIS MOTION FOR LEAVE IS TIMELY**

Shortly after the Markman Hearing, and to further comport with the pleading requirements of the *Exergen Corp.* case, Defendant requested the deposition of Ms. Ruth Morduch, the patent attorney that authored, filed and prosecuted both of the patents-in-suit. That deposition took place on Wednesday, October 13, 2010, in Washington, D.C. As a result of testimonial evidence extracted in that deposition,

Defendant may now satisfy the very specific "**who, what, where, when and how**" requirements of the Federal Circuit's *Exergen Corp.* decision.

## VI.    THE "WHO" OF THE MATERIAL MISREPRESENTATIONS

### A.    RUTH N. MORDUCH - alone, and in conspiracy with Neste/Wright Asphalt Products, Co., through its employee, Mr. Theodore Flanigan

Ms. Morduch is a Registered Patent Attorney. She was engaged by Plaintiff Wright's predecessor entity, and the assignee on the face of the patents, Neste/Wright Asphalt Products, Co., to prepare and prosecute the application which ultimately evolved into U.S. Patent No. 5,397,818 (the '818 Patent) (*See* **Exhibit "A,"** Morduch Deposition, p. 12, l. 21 through p. 13, l. 10). That engagement occurred well before the filing date of the application for the '818 Patent, i.e., **January 26, 1994.** Ms. Morduch also authored and prosecuted the application for the second patent-in-suit, U.S. Patent No. 5,492,561 (the '561 Patent).

### B.    THEODORE P. FLANIGAN

Mr. Flanigan is the named inventor for each of the patents-in-suit. At all times material hereto, he was an employee of the named assignee of the patents-in-suit, Neste/Wright Asphalt Products, Co. Mr. Flanigan was "intimately involved" in prosecuting the patent before the USPTO with Ms. Morduch. (*See* **Exhibit "A,"** Morduch Deposition, p. 51, ls. 16-18).

4

Upon receiving the Office Action, on or about May 27, 1994, Ms. Morduch forwarded a copy of the Office Action, including all of the cited references, to Mr. Flannigan for review and comment. (*See* **Exhibit "A,"** Morduch Deposition, pp. 49, l. 7 through p. 51, l. 18 ). Thereafter, and prior to authoring at lest one draft of, as well as the final response, along with Ms. Morduch's specific representations to the Patent Office, Mr. Flannigan did review and comment upon the cited references, including the Oliver '464 Patent. (*See* **Exhibit "A,"** Morduch Deposition, p. 51, ls. 6-18) Those comments were incorporated by Ms. Morduch into her representations and required arguments regarding the cited references in a written document entitled "Amendment Under 37 C.F.R. Sec. 1.115", filed at the Patent Office on **August 31, 1994** (*See* **Exhibit "A,"** Morduch Deposition, p. 51, ls. 6-18).

## VII.   THE "WHAT" OF THE MATERIAL MISREPRESENTATIONS

### A.   MATERIAL MISREPRESENTATION #1: MISREPRESENTATIONS REGARDING THE OLIVER '464 PRIOR ART PATENT.

Shortly after being engaged to prepare the patent application for the '818 Patent, Ms. Morduch initiated a patentability search for the subject matter of Mr. Flanigan's initial disclosure. (*See* **Exhibit "A,"** Morduch Deposition, p. 38, l. 24 through p. 39, l. 25). That search uncovered, among other patents, U.S. Patent No. 4,430,464, to Oliver (the "**Oliver '464 Patent**"). (*See* **Exhibit "A,"** Morduch

Deposition, p. 40, l. 5 through p. 41, l. 6). The Oliver '464 Patent was forwarded to Mr. Flannigan by Ms. Morduch. (*See* **Exhibit "A,"** Morduch Deposition, p. 103, l. 10 through p. 104, l. 20).

> **1.     THE DECEIVING STATEMENT IN THE '818 PATENT APPLICATION REGARDING THE RELEVANCE OF OLIVER '464 PATENT**

In drafting the '818 Patent application, Ms. Morduch authored a brief and extremely deceiving one sentence statement alleging the lack of significance of the Oliver '464 Patent. She told the Examiner that the:

> "Oliver U.S. Pat. No. 4,430,464, **describes a pavement binder composition in which rubber particles are digested in a bituminous material.**"

('818 Patent, Col. 1, lines 47-49) (emphasis added). (*See* **Exhibit "A,"** Morduch Deposition, p. 105, ls. 8-13).

> **2.     THE REPEATING OF THIS STATEMENT IN THE INFORMATION DISCLOSURE STATEMENT**

In comparison with her short comment about the Oliver '464 Patent, claim 11 of the '818 Patent specifically and originally read as follows: "An incorporated asphalt composition consisting essentially of about 1-27% ground tire rubber and about 73-99% distillation tower bottoms."

The Oliver '464 Patent was again considered and studied by Ms. Morduch and Mr. Flanigan when preparing and filing, on March 18, 1994, an "Information Disclosure Statement" ("IDS"). In the IDS, Ms. Morduch, for herself and on behalf

of Mr. Flanigan, listed all of the patents developed in the patentability prior art search, including the Oliver '464 Patent. Yet again, and for the second time, Ms. Morduch and Mr. Flanigan deceptively misled the Examiner about the significance of the Oliver '464 Patent by indicating that any such significance "described and **distinguished** on pages 1 and 2 of the application and their **relevance** is discussed therein." ('818 Patent Prosecution History, IDS) (emphasis added) Ms. Morduch said nothing further in the IDS about the Oliver '464 Patent.

Ms. Morduch admitted that her statement did not correctly state the significance of the Oliver '464 Patent in relation to the patentability of claims in the application, including composition Claim 11. Ms. Morduch testified that whether a composition is "sprayable" has nothing to do with the patentability of claim 11 of the '818 Patent. She also testified that the asphalt/rubber composition of the Oliver '464 Patent is not "fully incorporated", or homogeneous, although she has no factual support for such a statement. Further, she testified that the Oliver '464 Patent composition is "homogeneous", and "homogeneous" means "fully incorporated and stable". (*See* **Exhibit "A,"** Morduch Deposition, p. 106, l. 8 through p. 108, l. 13).

### 3.  FURTHER MISSTATEMENTS ABOUT THE RELEVANCE OF THE OLIVER '464 PATENT MADE IN RESPONSE TO THE OFFICE ACTION

In the filed Amendment, Ms. Morduch authored the misleading and incomplete misrepresentation of the relevance of the Oliver '464 Patent by flatly stating that:

> Oliver describes a pavement binder composition using a process in which rubber particles of low bulk density are digested in bituminous material. The rubber used is of low bulk density which is achieved by tearing apart and stretching the rubber or grinding or low speed rasping of the rubber before starting the process. Again, a process using air bombardment, as claimed, is not suggested or made obvious. This product is also a sprayable pavement binder (column 5, lines 34-49), similar to that of the Huff reference.

(Amendment, p. 6, W0000049, Morduch Depo. Exhibit 4).

### 4.  WHAT MS. MORDUCH FAILED TO TELL THE EXAMINER ABOUT THE OLIVER '464 PATENT

In truth, and as admitted by Ms. Morduch at her deposition, the Oliver '464 Patent discloses *much more of significance* to the patentability of composition Claim 11 in the '818 Patent, both as originally presented, and as later amended. The Oliver '464 Patent clearly discloses the use of a "distillation tower bottoms" material, i.e. a bituminous material, which is a vacuum distillation residue, ( Oliver '464 Patent, Col. 5, lines 7-15) and rubber particles, using both natural and synthetic sources. (*See* **Exhibit "A,"** Morduch Deposition, p. 123, l. 7 through p.

124, l. 17). The percentages of these two Oliver components are squarely within the percentage range recited in Claim 11 of the subject '818 Patent. (Oliver '464 Patent, Col. 4, line 67 - Col. 5, line 6.)

> ### 5. THE SAME MISLEADING STATEMENT ABOUT THE OLIVER '464 PATENT WAS REPEATED IN THE TEXT OF THE SECOND PATENT-IN-SUITE

Later, Ms. Morduch authored the application for the '561 Patent, the second patent-in-suit, in concert with Mr. Flanigan. The same misleading statement about the Oliver '464 Patent was made in the text of the application of '561 Patent. (*See* '561 Patent, Col. 1, lines 53 - 55.)

Plaintiff Wright has represented to this Court at the Markman Hearing that the '818 Patent and the "561 Patent are a "family" of patents. (Markman Hearing Continuation Transcript, p. 43, lines 8-10).

> ### 6. THE OLIVER '464 PATENT IS A "MATERIAL" REFERENCE

That the Oliver '464 Patent is a very **material** prior art reference is clearly and unmistakably proven by the fact that the Patent Office Examiner applied it against all of the pending claims in the application, when he refused to allow, and flatly rejected, each and every one of the pending claims. (*See* Office Action **mailed May 27, 1994**, pp. 2-3).

### 7. A PATTERN OF MISLEADING CONDUCT HAS BEEN ESTABLISHED

Thus, **on at least six separate occasions**, Ms. Morduch and Mr. Flanigan studied the Oliver '464 Patent: (1) upon receipt of it in the patentability search report; (2) in drafting and preparing the final document which became the filed application text for the '818 Patent; (3) upon the filing of the IDS; (4) upon receipt of a copy of the Oliver '464 Patent and the Office Action dated May 27, 1994; (5) in preparing and reviewing at least one draft, as well as the final document, of the "Amendment" filed on August 29, 1994; and (6) in preparing and filing the second patent-in-suit, the '561 Patent.

### B. MATERIAL MISREPRESENTATION #2: MISREPRESENTATIONS REGARDING THE YAN, ET. AL. '554 PRIOR ART PATENT.

#### 1. WHAT MS. MORDUCH TOLD THE EXAMINER ABOUT THE YAN '554 PATENT

In the required commentary in the amendment regarding the rejection of all of the claims in the application for the '818 Patent, Ms. Morduch represented to the Examiner that the Yan et. al. '554 Patent:

> describes a process for repairing asphalt pavement in which the components of the repair mixture may be ground tire rubber and an asphalt component, together with about 10 to 60 wt.% of **an aromatic solvent** component having a boiling range above 650 degrees F, **and a catalyst**. The solvent is defined in column 5, line 42 to column 6 line 60. In contrast to claimed invention, Yan does not suggest or make obvious a process in which

10

> neither a solvent nor a catalyst is used. The claims are limited to a process or product "consisting essentially of" the defined steps or components, respectively.

(Amendment, p. 6, W00000049) (emphasis added).

## 2.     WHAT MS. MORDUCH FAILED TO TELL THE EXAMINER ABOUT THE YAN ET. AL. '554 PATENT

In stark contrast to her representations to the Examiner about the disclosures in the Yan, et. al. '554 Patent, and her statements regarding the supposed patentable differences between Yan and the '818 claims as amended, Ms. Morduch misrepresented the Yan, et. al. '554 Patent, with respect to issued Claim 11 in the 818 Patent, because the Yan '554 Patent discloses: (1) a homogeneous composition having two components: (a) distillation tower bottoms, as defined in the '818 Patent at Col. 2, lines 20-24; and (b) ground tire rubber. (*See* **Exhibit "A,"** Morduch Deposition, p. 75, ls. 10-14; p. 75, l. 19 through p. 79, l. 14). Ms. Morduch drew the Examiner's attention to part of the Yan '554 Patent, and ***away from*** the critical parts that were contrary to her position. (*See* **Exhibit "A,"** Morduch Deposition, p. 94, ls. 14-25).

Ms. Morduch admitted that:

(1)     two of the components of the Yan composition are each "distillation tower bottoms" – and the "distillation tower bottoms" component of Claim 11 of the '818 Patent could include two or more such distillation tower bottoms. (*See* **Exhibit "A,"** Morduch Deposition, p. 24, ls. 1-20)[1];

---

[1] Ms. Morduch's testimony in this regard is consistent with that of Wright's technical expert, Dr. Gayle King.  (*See* Markman Hearing Transcript, pp. 92-95)

11

(2)     Yan, et. al. does disclose a two component homogeneous product of two chemicals -- which clearly come within the definition of "distillation tower bottoms," as defined in the '818 Patent, and an asphalt soluble elastomer (ground tire rubber) (*See* **Exhibit "A,"** Morduch Deposition, pp. 72, l. 14 through p. 75, l. 14; p. 77, ls. 1-13; p. 79, ls. 6-8; p. 81, l. 3 through p. 82, l. 7);

(3)     "FCC main column bottoms" and "TCC syntower bottoms," as used and defined in the Yan, et. al. '554 Patent, come within the scope of the definition of "distillation tower bottoms" in the '818 Patent (*See* **Exhibit "A,"** Morduch Deposition, p. 82, ls. 8-25);

(4)     "marginal asphalt stocks", or residuum, as defined and tested in the Yan, et. al. '554 Patent can be petroleum or thermal asphalts -- and do come within the definition of "distillation tower bottoms" in the "818 Patent (*See* **Exhibit "A,"** Morduch Deposition, p82, ls. 8-25; p. 90, l. 18 through p.93, l. 16);

(5)     Example II of the Yan, et. al. patent 9 Col 10, lines 7-23, clearly teaches the preparation of a "substantially homogeneous" composition of distillation tower bottoms and tire rubber -- well within the percentage ranges of Claim 11 of the '818 Patent (*See* **Exhibit "A,"** Morduch Deposition, p. 83, l. 1 through p. 85, l. 3); and

(6)     Claim 1 of the Yan, et. al. '554 Patent is in "Jepson" format, a format that recites in the preamble what is old, and after the phrase "the improvement being," recites the new or claimed invention, and that this claim is to a "homogeneous" composition – and the '818 Patent states that it too is to a homogeneous composition. (*See* **Exhibit "A,"** Morduch Deposition, pp. 79, l. 16 through p. 81, l. 2).

## C.    MATERIAL MISREPRESENTATION #3: MISREPRESENTATIONS REGARDING THE HUFF '049 PRIOR ART PATENT.

### 1.    WHAT MS. MORDUCH TOLD THE EXAMINER ABOUT THE HUFF '049 PATENT

Ms. Morduch told the Examiner that Huff:

> describes a process of producing a rubberized asphalt composition from devulcanized reclaimed rubber and asphalt which is sprayable and has a viscosity of less than 800 centipoises at 400 degrees F. The process does not include an air bombardment step and the product is completely different from the claimed composition which is not sprayable.

(Amendment, p. 6, W00000049).

Ms. Morduch testified that, contrary to the misleading statement she wrote to the Examiner about the significance of the Huff '049 Patent to the amended Claim 11 composition:,

(1) whether the composition was or was not sprayable was irrelevant to the patentability of Claim 11 (*See* **Exhibit "A,"** Morduch Deposition, p. 95, l. 4 through p. 98, l. 14);

(2) the Huff '049 Patent ***DOES*** disclose ***a two-component composition*** of: (a) rubber, including ground tire rubber, and (b) an asphalt base, within the percentages ranges of Claim 11 of the '818 Patent. (*See* **Exhibit "A,"** Morduch Deposition, p. 121, l. 14 through p. 122, l. 10) ("Summary of the Invention", Huff '049 Patent, Col. 2, lines 65-68).

Ms. Morduch now admits that she **"may not have been right"** in her statements to the Examiner. (*See* **Exhibit "A,"** Morduch Deposition, pp. 99, ls. 15-18). Also, Ms. Morduch admitted that she **did not disclose** to the Examiner a key example in the Huff '049 Patent. (*See* **Exhibit "A,"** Morduch Deposition, p. 99, l. 19 through p. 100, l. 6; p. 118, ls. 14-17).

### D.    MATERIAL MISREPRESENTATION #4: MISREPRESENTATIONS ABOUT THE PRIOR ART

**COMPOSITIONS NOT BEING "HOMOGENEOUS", OR
"FULLY INCORPORATED" AND "STABLE".**

     **1.    MS. MORDUCH TOLD THE EXAMINER THAT THE
COMPOSITION OF THE '818 PATENT WAS
"SUPERIOR" OVER THE PRIOR ART, BUT HAD NO
EVIDENCE TO PROVE IT.**

     Ms. Morduch admitted in her deposition that she had no proof of superiority

of Claim 11 over the prior art, **<u>despite claiming superiority of Claim 11 to the</u>

<u>Examiner to overcome a prior art rejection</u>**. (*See* **Exhibit "A,"** Morduch

Deposition, p. 54, l. 3 through p. 56, l. 4)

     **2.    MS. MORDUCH REPRESENTED TO THE EXAMINER
THAT THE COMPOSITION OF THE '818 PATENT WAS
AN 'INCORPORATED AND STABLE',
HOMOGENEOUS COMPOSITION; BUT HAD NEVER
SEEN THE '818 PRODUCT AND DID NOT KNOW OF
ANY TESTING OF IT TO PROVE SUCH PHYSICAL
PROPERTIES.**

     In addition, Ms. Morduch further misrepresented the prior art by stating that

they did not provide a homogenous and stable product as did amended and allowed

Claim 11. (*See* **Exhibit "A,"** Morduch Deposition, p. 63, l. 13 through p. 64, l. 19).

Thereafter, the claims were allowed, and Ms. Morduch paid the Issue Fee for

issuance of the '818 Patent.

     Ms. Morduch made no attempt to submit proof of superiority of the pending

claims in response to the office action. (*See* **Exhibit "A,"** Morduch Deposition, pp.

55, l. 1 through p. 56, l. 3 ). Instead, her arguments and representations were

14

submitted to the Patent Office Examiner in an attempt to elicit an allowance of the amended claims, in a deliberate effort to overcome the Examiner's refusal to allow any claims. (*See* **Exhibit "A,"** Morduch Deposition, pp. 58, l. 12 through p. 62, l.5).

Even though Ms. Morduch testified that one could only determine if a given composition fell within the scope of Claim 11 of the '818 Patent by **testing** it to determine if it was "homogeneous and stable," (*See* **Exhibit "A,"** Morduch Deposition, p. 120, ls. 1-21) neither Ms. Morduch nor Mr. Flanigan, nor any one at Neste/Wright Asphalt ever bothered to test the two-component material of the Oliver '464 Patent, or any of the compositions of the other patents cited by the Examiner and discussed below, to determine if its disclosure and components avoided these supposed physical property limitations of Claim 11, as originally presented or as amended. (*See* **Exhibit "A,"** Morduch Deposition, p. 37, l. 24 through p. 38, l. 19; p.55, ls 13-17; p. 57, l. 20 through p 58, l. 2).

Thus, neither Ms. Morduch nor Mr. Flanigan did not and could not know – contrary to specific statements made to the USPTO – whether any of these prior art patents formed an "incorporated" or "homogeneous and stable" composition— because they did not do any testing, nor did Ms. Morduch rely on any other objective evidence.

15

## VIII. THE "WHERE" OF THE MATERIAL REPRESENTATIONS: ANOTHER PATTERN OF INEQUITABLE CONDUCT

These acts of misrepresentation, as described above, were performed by Ms. Morduch, in concert and conspiracy with Mr. Flanigan in the United States Patent Office by: (1) filing the application for the '818 Patent in the Patent Office; (2) filing the IDS; (3) filing the Amendment of the '818 Patent; (4) preparing and prosecuting the second patent-in-suit, the '561 Patent; and (5) paying the Issue Fee for patents that were and continue to be tainted by inequitable conduct. (*See* **Exhibit "A,"** Morduch Deposition, p. 20, ls. 10-14; p. 26, l. 10 through p. 27, l. 17; p. 36, ls. 9-14; p. 56, l. 22 through p. 57, l. 3; p. 62, ls. 1-5; p. 65, ls. 4-11; p. 71, l. 24 through p. 72, l. 8; p. 91, ls. 9-15; p. 104, ls. 11-20),

## IX. THE "WHEN" OF THE MATERIAL REPRESENTATIONS

The misrepresentations and inequitable conduct, described above, occurred when: (1) the application for the '818 Patent was filed (with respect to the Oliver '464 Patent); (2) upon filing the IDS; (3) upon the filing of the Amendment and Responses to Office Action with the United States Patent Office; (4) upon the filing of the application for the Flanigan '561 Patent; and (5) upon the payment of the issue fee for each of the patents-in-suite.

## X. THE "HOW" OF THE MATERIAL REPRESENTATIONS

Ms. Morduch worked closely with Wright's predecessor and the named inventor, Theodore P. Flanigan, in the authoring the '818 Patent application.

16

Flanigan was at all times material hereto, an employee of Plaintiff Wright's predecessor in interest. Ms. Morduch, in conspiracy with Mr. Flanigan, intentionally misrepresented to the Patent Office Examiner in ***six*** separate instances the true, complete and correct significance of prior art references, cited by the Examiner in rejecting the claims. These references are clearly material to the subject matter of the claimed invention, as originally presented, and as amended. Their **pattern** of misleading conduct clearly proves an intent to deceive, and was perpetrated to elicit an allowance of the claims in the '818 and '561 Patents.

## XI.   A PATTERN OF MATERIAL NON-DISCLOSURES AND AFFIRMATIVE MISREPRESENTATIONS IS SUFFICIENT TO PROVE INTENT

Numerous cases have held that a pattern of material non-disclosures and affirmative misstatements is evidence of intent to deceive the patent office sufficient for a finding of inequitable conduct. *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259 (Fed. Cir. 1997) (inferring intent to mislead on the part of the patent applicant in light of the applicant's failure to offer a good faith explanation of the pattern of nondisclosure); *Paragon Pdiatry Lab., inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993) (holding that "[t]he prosecution of the patent application in this case, viewed in its entirety, demonstrates an overriding pattern of misconduct sufficient to support the district court's finding of culpable intent."); *Eisai Co., Ltd. v. Teva Pharm. USA,*

17

*Inc.*, 629 F. Supp. 2d 416 (D.N.J. 2009) (noting that a pattern of non-disclosure is relevant to intent to deceive); *Nisus Corp. v. Perma-Chink Systems, Inc.*, 2006 WL 2128903, *4-5 (E.D. Tenn. July 27, 2006) (finding intent to deceive under the totality of circumstances where there was an ongoing pattern of intentional failures by the patent applicant to disclose highly material information to the PTO); *A.B. Dick Co. v. Burroughs Corp.*, 617 F. Supp. 1382, 1396 (N.D. Ill. 1985) (noting that "while making a single material misrepresentation, or the withholding of a single piece of material information, may alone suffice to establish inequitable conduct, a pattern of such actions or omissions clearly indicates a disdain for the administrative process that cannot be rationalized as an honest mistake, and such a pattern provides strong support for a ruling of inequitable conduct.").

This Court cannot ignore Ms. Morduch's repeated misrepresentations to the PTO regarding the prior art. When considered with the totality of the circumstances, these misrepresentations were made with intent to deceive the patent office.

## CONCLUSION

Defendant Pelican's motion for leave to amend its Original Answer and Counterclaim is timely and comports with the applicable law regarding pleading a claim of inequitable conduct. A copy of the proposed amended pleading is attached hereto as **Exhibit "B."** It is respectfully requested and moved that the motion be

granted in all respects.

A proposed Order is attached.

Respectfully submitted,

Beirne, Maynard & Parsons, L.L.P.

/s/ Scott D. Marrs
**Scott D. Marrs**
FID No. 13605
State Bar No. 13013400
1300 Post Oak Blvd, Ste. 2500
Houston, Texas 77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile
smarrs@bmpllp.com

**ATTORNEY IN CHARGE FOR
DEFENDANT/COUNTER-PLAINTIFF
PELICAN REFINING CO., LLC**

**OF COUNSEL:**

Beirne, Maynard & Parsons, L.L.P.
**William C. Norvell, Jr**.
FID No. 6755
State Bar No. 15113000
wnorvell@bmpllp.com
**Sean P. Milligan**
FID No. 705815
State Bar No. 24055978
smilligan@bmpllp.com
1300 Post Oak Blvd, Ste. 2500
Houston, Texas 77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile

19

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I have conferred with counsel for Plaintiff/Counter-Defendant, via email regarding the relief requested in this motion. Plaintiff/Counter-Defendant has indicated that it is ***opposed*** to the relief requested in this motion.

/s/ Sean P. Milligan

Sean P. Milligan

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this pleading was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 28th day of October, 2010.

/s/ Scott D. Marrs

Scott D. Marrs

20

1263087v.1 004749/090512