**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WRIGHT ASPHALT PRODUCTS CO., LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-1145 |
| PELICAN REFINING COMPANY, LLC, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The issue raised in the pending motion for leave to amend is when a patent attorney's statements made during prosecution about disclosed prior art can be inequitable conduct. The defendant/counterclaimant in this patent infringement case has moved to amend to add inequitable conduct allegations to the allegations of invalidity. The stated basis for amending at this stage is the patent attorney's deposition testimony on written statements she made about prior art patents during the prosecution 15 years earlier. The proposed amended pleading and the documents cited and submitted with it show that these written statements were the attorney's arguments in favor of patentability. The law is clear that a prosecuting attorney is free to present arguments about why an invention may be patented over disclosed prior art "without fear of committing inequitable conduct." *Rothman v. Target Corp.*, 556 F.3d 1310, 1329–30 (Fed. Cir. 2009) (citing *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007)). While there are limits on what an attorney may present in such arguments, the facts alleged in the proposed amended pleading do not, as a matter of law, approach those limits and do not state a claim for inequitable conduct.

The motion for leave to amend to file the proposed pleading is denied.  The reasons are stated in detail below.

## I.     Background

Wright Asphalt Products Co., LLC sued Pelican Refining Co., LLC,  alleging infringement of two patents.  Pelican counterclaimed, asserting invalidity.  Pelican seeks leave to amend its answer and counterclaim to add inequitable conduct allegations.  (Docket Entry No. 55).  Pelican's proposed allegations are based on statements made over 15 years ago by the inventor's attorney, Ruth Morduch,[1] in arguing that the proposed inventions were distinguishable from three disclosed prior art patents: U.S. Patent Nos. 4,430,464 (the Oliver Patent); 4,166,049 (the Huff Patent); and 4,358,554 (the Yan Patent).  The examiner initially rejected the '818 Patent based on the prior art. Pelican contends that Morduch's statements about the prior art patents, particularly in responding to the PTO's rejection, were misrepresentations that amount to inequitable conduct.  In the proposed amended pleading, Pelican cites what it alleges are "admissions" in Morduch's deposition that her statements were misrepresentations about the prior art.  Pelican attaches a copy of Morduch's deposition to the proposed amended pleading.  Wright responds that the proposed allegations do not, as a matter of law, state a claim for inequitable conduct.

### A.     The Prosecution History

The prosecution history for the '818 Patent addresses the Oliver, Huff, and Yan Patents in several places.  Morduch identified seven patents as relevant prior art, including the Oliver Patent, on the Form PTO-1449 filed with the initial application.  (Docket Entry No. 36, Ex. A-1, at 33).  In

---

[1]   The proposed amended answer and counterclaim also mentions the inventor, Theodore Flanigan, but does not identify statements made by him.

2

the Information Disclosure Statement, Morduch wrote: "The documents listed on Form PTO-1449 are described and distinguished on pages 1 and 2 of the application and their relevance is discussed therein." (*Id.* at 32). That section of the application contained this sentence about the Oliver Patent: "Oliver U.S. Pat. No. 4,430,464, describes a pavement binder composition in which rubber particles are digested in a bituminous material." (Docket Entry No. 55, Ex. B. ¶ 41).

The patent examiner initially rejected the '818 Patent as obvious in light of the prior art. *See* 35 U.S.C. § 103(a) ("A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made . . . ."). The patent examiner explained:

> Claims 1–15 are rejected under 35 U.S.C. § 103 as being unpatentable over Yan et al. 4,358,554, Huff 4,166,049, [and] Oliver 4,430,464 . . . .
>
> As far as the composition is concerned the composition claimed consists of asphalt and particulate rubber. Whether the asphalt comes from distillation tower bottoms or not, is immaterial. Whether the rubber comes from tires or not is not relevant. As far as the process is concerned, the examiner holds, that it is simply heating and melting together rubber and asphalt with agitation. There was no showing of the criticality for the use of hot air under specified pressure. Also there was no showing of criticality as far as the cited concentrations of rubber and asphalt are concerned. The cited references all show rubber and asphalt mixed together with heat and agitation. The examiner holds, that without proof of superiority all sources of heat or modes of mixing are obvious. The examiner also holds, that since there is no proof of superiority for the product of the claimed process, any blend of molten rubber and asphalt will read on applicant's claims.

(Joint Ex. 1A at 40–41).

3

In response, the inventor amended the claims and the attorney submitted remarks arguing that the denial was incorrect and explaining why the amended application should be approved. Part of the remarks addressed prior art references:

> The cited references are discussed in detail below. None of the references describes the process limitations of injecting air under pressure, bombarding with air and abrasively absorbing the ground tire rubber into the distillation tower bottoms under the bombarding action of the injected air, as claimed. With respect to the product claims, none of the references cited provide a product which is "incorporated" as defined in the specification, page 4, lines 21–24, as an "asphalt composition in which the ground tire rubber is fully incorporated into the distillation tower bottoms." This clearly states the distillation tower bottoms is the carrier for the ground tire rubber.
>
> . . . .
>
> Yan et al. describes a process for repairing asphalt pavement in which the components of the repair mixture may be ground tire rubber and an asphalt component, together with about 10 to 60 wt.% of an aromatic solvent component having a boiling range above 650 0F, and a catalyst. The solvent is defined in column 5, line 42 to column 6 line 60. In contrast to the claimed invention, Yan does not suggest or make obvious a process in which neither a solvent nor a catalyst is used. The claims are limited to a process or product "consisting essentially of" the defined steps or components, respectively.
>
> Huff describes a process of producing a rubberized asphalt composition from devulcanized reclaimed rubber and asphalt which is sprayable and has a viscosity of less than 800 centipoises at 4000F. The process does not include an air bombardment step and the product is completely different from the claimed composition which is not sprayable.
>
> Oliver describes a pavement binder composition using a process in which rubber particles of low bulk density are digested in bituminous material. The rubber used is of low bulk density which is achieved by tearing apart and stretching the rubber or grinding or low speed rasping of the rubber before starting the process. Again, a process using air bombardment, as claimed, is not suggested or made obvious. This product is also a sprayable pavement binder (column 5, lines 34-49), similar to that of the Huff reference.

*Id.* at 48–49.

### B. The Proposed Allegations

Pelican's proposed amended pleading alleges inequitable conduct based on Morduch's statements about the Oliver, Yan, and Huff Patents. Pelican alleges that the Oliver Patent "discloses *much more of significance* to the patentability of composition of Claim 11 in the '818 Patent, both as originally presented and as amended" than Morduch described in her remarks responding to the office action initially rejecting the '818 Patent. (Docket Entry No. 55, Ex. B, ¶ 52 (emphasis in original)). Claim 11 of the '818 Patent claims an "incorporated asphalt composition," construed by this court as an asphalt composition that is "homogenous and stable." (Docket Entry No. 58 at 17–26). The composition consists of ground tire rubber and distillation tower bottoms. Pelican alleges that Morduch's statements were misleading because she failed to disclose that Claim 1 in the Oliver Patent, like Claim 11 in the '818 Patent, claims a product that contains rubber and asphalt. (Docket Entry No. 55, Ex. B, ¶ 53). Pelican alleges that Morduch "admitted" during her deposition that the Oliver Patent disclosed more than she pointed out to the examiner that was "of significance to the patentability of the composition claim 11 in the '818 Patent." (*Id.*, ¶ 52).

Pelican also alleges that Morduch misrepresented the Yan Patent in the remarks submitted to the PTO. Pelican alleges that Morduch's remarks failed to point out that the Yan Patent discloses "(1) a homogenous composition having two components: (a) distillation tower bottoms, as defined in the '818 Patent at Col. 2, lines 20–24; and (b) ground tire rubber. Ms. Morduch drew the Examiner's attention to part of the Yan Patent and ***away from*** the critical parts that were contrary to her position." (Docket Entry No. 55 at 11 (citations omitted; emphasis in original)). In the proposed amended pleading, Pelican cites statements in Morduch's deposition as "admissions" that

parts of the Yan Patent she did not specifically point out to the examiner were "contrary to her position."  (*Id.*, Ex. B, ¶¶ 61–67).

The third alleged misrepresentation concerns Morduch's characterization of the Huff Patent in the remarks to the examiner.  Pelican alleges that Morduch's characterization was misleading because, as with the Yan Patent, sprayability is irrelevant to patentability.  (*Id.*, ¶ 69).  Pelican faults Morduch for not affirmatively disclosing that the Huff Patent claimed a composition that, like the '818 Patent, included rubber and asphalt.  (*Id.*, ¶ 70); *see also* Huff Patent, col.2, ll.65–67 ("This invention involves selecting the proper rubber compounds and an asphalt base having the proper composition . . . ."); *id.* at col.3, ll.8–9 (noting the use of "devulcanized reclaimed rubber produced from whole scrapped tires").  Pelican alleges that in her deposition, Morduch "admits that she 'may not have been right' in her statements to the Examiner" and that she "did not disclose a key example in the Huff '049 Patent."  (Docket Entry No. 55, Ex. B. ¶¶ 69, 72).

Finally, Pelican alleges that Morduch made a misrepresentation to the examiner by claiming that the product claimed in the '818 Patent was superior to the products claimed in the disclosed prior art because it was "homogenous and stable."  Pelican alleges that this was a misrepresentation because Morduch did not have test results showing either that the '818 Patent's product was homogenous and stable or that the prior art products were not.  (*Id.*, ¶¶ 73, 74, 77).  The alleged misrepresentation is the failure to state that Morduch "had no proof of superiority of claim 11 over the prior art, **despite claiming superiority of Claim 11 to the Examiner to overcome a prior art rejection.**"  (*Id.*, ¶ 73 (emphasis in original)).  Pelican alleges that Morduch and the inventor "did not and could not know — contrary to specific statements made to the USPTO, and during the pendency of the application for the '818 Patent — whether any of these prior art patents formed an

'incorporated' or homogenous and stable' composition — because they did not do any testing, nor did they rely on any other objective evidence." (*Id.*, ¶ 78). Pelican again cites to Morduch's deposition as containing an "admission."

Pelican contends that its motion to amend is timely because it discovered the facts sufficient to allow it to satisfy Rule 9(b)'s pleading standards when it took Morduch's deposition. Wright does not challenge timeliness but argues that this court should deny leave to amend because the allegations are insufficient under Rule 9(b) and because the misstatements alleged are attorney argument, not material misrepresentations, as a matter of law.

The arguments are analyzed below.

## II.    The Applicable Legal Standards

### A.    Leave to Amend

Although local circuit law applies to motions to amend, Federal Circuit law applies to determine whether allegations of inequitable conduct are sufficient. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356–57 (Fed. Cir. 2007)).  Rule 15(a) provides that after a responsive pleading is served, a party may amend only "with the opposing party's written consent or the court's leave." *Id.*  Although a court "should freely give leave when justice so requires," FED. R. CIV. P. 15(a), leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  Rule 16(b) states that scheduling orders "may be modified only for good cause and with the judge's consent."  The Rule 16(b) "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend filed after

the deadline set in the scheduling order. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546–47 (5th Cir. 2003). Because Wright does not challenge the timeliness of the motion or urge that Rule 16 applies, the issue is whether to grant leave to file the amended pleading under Rule 15(a). *See Johnson*, 975 F.2d at 608; *see also S & W Enters.*, 315 F.3d at 536.

In deciding whether to grant leave to file an amended pleading under Rule 15(a), a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). Amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). In determining futility, the court is to apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than

8

a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The Federal Circuit has recognized that inequitable conduct is a "broader concept than fraud," but nonetheless requires that it be pleaded with particularity under Rule 9(b). *Exergen*, 575 F.3d at 1326 (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* (citing *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1001 (C.C.P.A. 1981)). The Federal Circuit requires a party to plead "the specific who, what, when, where, and how of the material misrepresentation or omission before the PTO." *Id.* "[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. It is not necessary, however, for the inference to be "the single most reasonable inference able to be drawn." *Id.* at 1329 n.5 (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)) (emphasis removed).

The Morduch deposition is properly considered in determining whether to allow leave to amend under Rule 15. The Rule 12(b)(6) analysis begins with the complaint but may extend to documents attached to or incorporated into the complaint. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6

(5th Cir. 1994). Pelican's proposed amended counterclaim is based on Morduch's deposition and the allegations are replete with claims about what Morduch testified to in that deposition. The deposition is attached to the motion and proposed amended pleading. The deposition may be considered in determining whether leave to amend would be futile.

### B.    Inequitable Conduct

"Inequitable conduct includes affirmative misrepresentation of material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive." *Young*, 492 F.3d at 1348 (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)). The Federal Circuit has cautioned that "courts must be vigilant" in not permitting inequitable conduct to be applied "too lightly." *Star Scientific*, 537 F.3d at 1366. "Just as it is inequitable to permit a patentee who obtained his patent through deliberate misrepresentations or omissions of material information to enforce the patent against others, it is also inequitable to strike down an entire patent where the patentee only committed minor missteps or acted with minimal culpability or in good faith." *Id.*

Failing to disclose a material prior art patent may be inequitable conduct. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1235 (Fed. Cir. 2007).[2] When an inventor attorney discloses "prior art . . . that is in the PTO file and accessible to the examiner, a court is less likely to find inequitable conduct." 6 Chisum on Patents § 19.03[2]; *see also id.* n.4 (collecting cases). "While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present

---

[2]    An inventor or prosecuting attorney may also fail to disclose prior art by "burying the most pertinent prior art among large volumes of less relevant prior art." *See Advanced Ion Beam Tech., Inc. v. Varian Semiconductor Equip. Assocs., Inc.*, 721 F. Supp. 2d 62, 78 (D. Mass. 2010) (citing cases). In such cases, the "burial" actively conceals the information, and courts treat it as if it was not disclosed at all. Burial is not an issue in this case because of the relatively small number of patents identified and attention Morduch and the examiner gave to the Huff, Oliver, and Yan Patents.

argument in favor of patentability without fear of committing inequitable conduct." *Rothman*, 556 F.3d at 1329–30 (citing *Young*, 492 F.3d at 1348). Courts presume that providing the prior art references allows the patent examiner to assess the attorney arguments about patentability over those references. *Young*, 492 F.3d at 1349 (finding no material misrepresentation when the applicant "argued against the rejection, and the examiner was free to reach his own conclusions and accept or reject [the applicant's] arguments"); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) (noting that the examiner remains "free to reach his own conclusion regarding the . . . [invention] based on the prior art in front of him.").

Courts generally do not find incomplete description of a disclosed prior art reference a basis for claiming inequitable conduct. *Advanced Ion Beam*, 721 F. Supp. 2d at 77–78 (dismissing under Rule 12(b)(6) "allegations regarding the inventors' removal of the phrase 'for at least one embodiment' from their description of Figure 6 of the '328 Patent" because they did not support a plausible claim of fraud on the PTO); *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 WL 13058, at *7 (N.D. Cal. Jan. 3, 2006) (rejecting a theory of inequitable conduct "based on an alleged failure to bring every detail of the disclosed reference to the examiner's attention" under Rule 12(b)(6)); *Transclean Corp. v. Bridgewood Servs., Inc.*, No. 2000 WL 33175724, at *8 (D. Minn. Nov. 1, 2000) ("We find the notion, as espoused by the Defendant, that the Plaintiffs only referenced the Becnel Patent in their Patent Application, as pertinent prior art, because they wanted to shield the substantive pertinence of that Patent from the Examiner's attention to be implausible, if not perverse.").

The cases finding inequitable conduct based on attorney arguments about disclosed prior art references involve more than incomplete descriptions of the prior art. In *Semiconductor Energy*

11

*Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368 (Fed. Cir. 2000), the Federal Circuit held that submitting a Japanese-language prior art reference with a partial English translation amounted to a failure to disclose material information in the untranslated portion. The inventor submitted only a "one-page, partial translation focus[ed] on less material portions and a concise statement directed to these less material portions," leaving "the examiner with the impression that the examiner did not need to conduct any further translation or investigation." *Id.* at 1375. This amounted to "constructively withh[olding] the reference from the PTO." *Id.* The court rejected the plaintiff's reliance on the presumption that the examiner considers all material submitted to the PTO as "absurd," given the circumstances. *Id.* "Though the examiner is indeed presumed to have done his job correctly, there is no support in the law for a presumption that the examiner will understand foreign languages such as Japanese or will request a costly complete translation of every submitted foreign language document, particularly in the absence of any reason to do so." *Id.*

*Semiconductor Energy* illustrates that when the prior art reference is particularly difficult to understand, the presumption that the examiner can assess the prior art on his own holds less force and partial disclosure may constitute inequitable conduct. But if the prior art is disclosed and reasonably accessible, an incomplete statement about that prior art is ordinarily insufficient to allege inequitable conduct. "[I]f a person of skill in the art would understand a disclosed piece of prior art to teach a certain fact relevant to the prosecution of the patent in suit, and an applicant's statement distorts or otherwise misrepresents that fact, that statement can serve as the basis for inequitable conduct charges. If the statement is not 'demonstrably false' in this regard, the statement must be considered a legal argument made to distinguish pieces of prior art and cannot serve as the basis for

sanctions." *McKechnie Vehicle Concepts USA, Inc. v. Lacks Indus., Inc.*, No. 09-cv-11594, 2010 WL 4643081, at *6 (E.D. Mich. Nov. 9, 2010).

The *McKechnie* court relied primarily on *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354 (Fed. Cir. 2010). In *Ring Plus*, a company holding patents for delivering messages over a phone line while the phone rings sued a cell phone company for offering ring tones that varied with the caller's identity. The defendant alleged that the inventor made two misrepresentations to the patent examiner during prosecution. First, the patent application's background section included a statement that the prior art "propose[d], hardware based systems, but no software to operate those systems." *Id.* at 1359 (citations and emphasis omitted). Second, the inventors asserted that they had "very carefully examined" the prior art and concluded that "one of the distinctions between the applicant's system . . . any other reference known to the applicant is the fact that the applicant's system only generates [a] message when the phone line between the caller and the recipient is not busy." *Id.* (alterations in original). After a bench trial, the district court concluded that both statements were false. The prior art disclosed software-based algorithms. The prior art also made a "sound presentation" only when the recipient was not busy, like the claimed invention. The district court concluded that the inventors' statements were material misrepresentations. On appeal, the Federal Circuit affirmed the district court's finding that the first statement was a material misrepresentation and reversed as to the second. The appellate court noted that the prior art did not "explicitly disclose[]" software. But because the prior art "describe[d] components that are generally understood by persons of skill in the art to be associated with computers and software," the district court did not clearly err in finding that there was a specific direct misrepresentation about the contents of the prior art. *Id.* at 1359–60. The court disagreed that the second statement was a

13

material misrepresentation.   The prior art references viewed as a whole were consistent, not inconsistent, with the challenged statements.   These statements described "the general operation of a prior art telephone system" but did "not disclose generating a message only if the line is not busy." *Id.* at 1360.

In contrast to the type of specific statements at issue in *Ring Plus*, more general attorney arguments about patentability over disclosed prior art are generally insufficient for inequitable conduct.   In *Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363 (Fed. Cir. 2008), for example, the prosecuting attorney told the examiner that the prior art references submitted for consideration with the application "do not relate to the invention and, therefore, further discussion of the same is not necessary."   *Id.* at 1379.   In his testimony, the prosecuting attorney admitted that "he did not actually examine the prior art identified, and that his statement that 'the references do not relate to the invention' was the same biolerplate language he used in other prior art statements."   *Id.* Nevertheless, the Federal Circuit affirmed the district court's conclusion that the statement was not a material misrepresentation.   The Federal Circuit held that the statement "amounted to mere attorney argument," observing that the precedent "made clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art."   *Id.* (citing *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000)).   "Given that the [prior art] application had been submitted to the patent examiner to examine herself," the court concluded, "she was free to accept or reject the patentee's arguments distinguishing its invention from the prior art."   *Id.*   The court did not find significant the prosecuting attorney's acknowledged failure even to look at the prior art references he claimed to be unrelated to the invention.

In *Young v.  Lumenis*, the court considered three alleged misrepresentations about a prior art reference provided to the examiner during a reexamination proceeding:

> (1)  "The only reference in Fossum to this illustration is at the end of the quoted sentence that discusses the first incision through the skin, not through tendons and ligaments.  Thus, the only reasonable interpretation of this illustration and the reference to it when discussing the first incision is that it shows the location of the first incision: through the skin.  Fossum teaches a skin incision at the joint between PII and PIII not near the edge of the ungual crest."  (emphasis in original).

> (2)  "The prior art *only* teaches to cut though the joint in a single straight cutting path." (emphasis in original).

> (3) "The Fossum reference also teaches a single cutting path incision starting with the skin at the PII-PIII joint."

492 F.3d at 1348–49.  As in *Innogenetics*, the court concluded that the statements were "attorney argument, attempting to distinguish the claims from the prior art, not gross mischaracterizations or unreasonable interpretations of the Fossum Reference.  They describe [the prosecuting attorney's] interpretation of what the Fossum reference teaches and why the incision disclosed in that reference is different from the claimed incision."  *Id.* at 1349.  The court emphasized that the statements were "not demonstrably false."  *Id.*  The examiner's duty to consider the prior art also contributed to the court's finding that there was no material misrepresentation.  "The examiner had the Fossum Reference to refer to during the reexamination proceeding," and, as here, "initially rejected claim 1 based on that reference.  Young argued against the rejection, and the examiner was free to reach his own conclusions and accept or reject Young's arguments."  The court concluded that the statements, "which consist of attorney argument and an interpretation of what the prior art discloses, [did not] constitute affirmative misrepresentations of material fact."  *Id.*

15

Similarly, in *Rothman v. Target Corp.*, the Federal Circuit determined that the attorney's statements distinguishing the prior art could not amount to inequitable conduct even though the attorney "did not have any prior experience with [the prior art] when he made them [or] consult anyone knowledgeable in the field before submitting them to the examiner." 556 F.3d at 1328. The inequitable conduct allegation focused on the following statement made during patent prosecution:

> Nursing garments are highly specialized garments that are designed produced and sold by a small segment of the clothing industry. Nursing garments, as distinguished from maternity garments, are not analogous prior art to women's garments in general.  A nursing bra has a detachable nursing flap, structural feature not found in a regular bra.  Therefore, it is improper to combine a prior art reference from nursing garments with a prior art reference from garments generally, with no connection to nursing garments.

*Id.*  The court concluded that the passage "does not even approach an effort to deceive the PTO." *Id.* at 1329.  The defendants alleged that the final sentence constituted inequitable conduct because the attorney no prior experience with nursing garments nor did he consult anyone who had such experience when he made the statement.  The court disagreed, calling the statement "nothing more than attorney argument based on the foregoing facts."  *Id.*  The court noted that the conclusion "derive[d] from his analysis that nursing garments are different from regular women's wear.  The examiner was free to analyze that conclusion based on the prior art and the nature of this predictable field." *Id.*

Under Federal Circuit precedent, as a general rule, when the relevant prior art is disclosed to the examiner, attorney statements emphasizing differences between the invention and the prior art while downplaying or ignoring similarities cannot be inequitable conduct unless the prior art reference is so difficult to understand that omitting or understating aspects is functionally equivalent to not disclosing the prior art reference at all.  *See Semiconductor Energy*, 204 F.3d at 1375.

16

Allegations of affirmative material misstatements about the prior art can give rise to an inequitable conduct claim if "a person of skill in the art would understand a disclosed piece of prior art to teach a certain fact relevant to the prosecution of the patent in suit, and an applicant's statement distorts or otherwise misrepresents that fact," *McKechnie*, 2010 WL 4643081, at *6, and the allegations support an inference that the attorney or inventor knew the statement to be false and intended to deceive the patent examiner. *Exergen*, 575 F.3d at 1328–29.

## III.   Analysis

Pelican contends, and Wright does not dispute, that it could not reasonably have pleaded inequitable conduct until Morduch's deposition. The Rule 15(a) standard applies. The question is whether the proposed amended pleading is futile because as a matter of law the allegations cannot support an inequitable conduct claim.

The proposed amended pleading alleges misrepresentations about the Oliver Patent in the application and the later remarks. Pelican alleges that the application claimed that the Oliver Patent was "described and distinguished" and its "relevance [was] discussed" by the statement that the Oliver Patent "describes a pavement binder composition in which rubber particles are digested in a bituminous material." (Docket Entry No. 55, Ex. B, ¶¶ 42, 46).[3] Pelican asserts that Morduch misrepresented that the statement she gave the examiner about the Oliver Patent "described and distinguished" the Oliver Patent. Pelican appears to argue that this statement is a misrepresentation because it argues that the Oliver Patent is irrelevant. This statement by a prosecuting attorney does not approach the type of affirmative misrepresentation required to give rise to an inequitable

---

[3]   Pelican asserts that Morduch stated that the Oliver Patent describes a pavement binder composition in which rubber particles are digested in a bituminous material," (*id.*, ¶¶ 42, 46), but Pelican does not allege that statement to be false. The remarks also include factual statements, such as the statement that "the rubber used is of low bulk density," which Pelican does not claim are false.

misconduct claim.  Such a statement is far less misleading than the attorney's claim in *Innogenetics* that the references submitted with the application did "not relate to the invention and, therefore, further discussion of the same [was] not necessary."  *See Innogenetics*, 512 F.3d at 1363.

Pelican also alleges that Morduch's characterization of the Oliver Patent in the remarks was a misrepresentation.  Morduch stated:

> Oliver describes a pavement binder composition using a process in which rubber particles of low bulk density are digested in bituminous material.  The rubber used is of low bulk density which is achieved by tearing apart and stretching the rubber or grinding or low speed rasping of the rubber before starting the process.  Again, a process using air bombardment, as claimed, is not suggested or made obvious.  This product is also a sprayable pavement binder (column 5, lines 34–49), similar to that of the Huff reference.

(*Id.*, ¶ 51).  Pelican alleges that "[i]n truth, and as admitted by Ms. Morduch at her deposition testimony, the Oliver '464 Patent discloses *much more of significance* to the patentabilty of composition Claim 11 in the '818 Patent, both as originally presented, and as later amended."  (Docket Entry No. 55, Ex. B, ¶ 52 (emphasis in original)).  The omissions about the Oliver Patent are not inequitable, as a matter of law.  With the prior art references presented to him, the examiner was "free to reach his own conclusions and accept or reject" Morduch's arguments.  *See Young*, 492 F.3d at 1348–49; *see also Advanced Ion Beam*, 721 F. Supp. 2d at 77–78; *McKechnie*, 2010 WL 4643081, at *7 (dismissing an allegation of inequitable conduct that made "no accusations that [the inventor] said anything about the  [prior art] that was untrue, but only that its description of the patent in the background discussed and emphasized certain features of the [prior art] rather than others [the defendant] deemed to be more relevant after the fact") (distinguishing *Semiconductor Energy*).  Pelican does not and could not contend that the Oliver Patent was so long or complex that the examiner could not evaluate it and reach his own conclusions.  The concerns that were critical

to the court's conclusion that the omissions concerning the disclosed prior art references in *Semiconductor Energy* were actionable are simply not present here.  It is clear that the examiner considered the Oliver reference, as he rejected the initial application based in part on that patent.  *See Young*, 492 F.3d at 1349  (finding that the rejection of application based on the allegedly misrepresented references weighed against materiality); *Akzo*, 808 F.2d at 1482 (same).  Morduch's alleged omissions are not inequitable conduct.

Pelican's citations to parts of Morduch's deposition testimony, which it characterizes as "admissions," do not provide a basis to grant leave to amend.  Pelican alleges that Morduch "testified that the Oliver '464 Patent is 'homogenous,' and 'homogenous means fully incorporated and stable.'"  (*Id.*, Ex. B, ¶ 50).  Pelican's allegation is contradicted by the deposition testimony attached to the proposed amended pleading.  Morduch testified that all fully incorporated substances are homogenous, but not all homogenous substances are fully incorporated.  She made this point clear when Pelican's attorney questioned her during her deposition:

> Q.      Oliver, okay.  It tells you it's homogenous, doesn't it?
>
> A.      Homogenous can mean other things than fully incorporated, and our claims are all limited to fully incorporated.
>
> Q.      So homogenous and fully incorporated ain't the same animals?
>
> A.      Correct.  The fully incorporated is homogeneous and stable.  And homogenous can be like — it can either be fully incorporated —
>
> Q.      Okay.
>
> A.      — or it can have particles in it.

(Docket Entry No. 44, Ex. A at 107–08).  Morduch later specifically defined "homogenous" and contrasted it to "fully incorporated":

> Homogenous means that is you cut cross-sections through . . . it's the
> same throughout.  And in this case, it is not only homogenous and
> stable, it's fully incorporated, which means that the material is the
> same throughout, that it isn't particles in a binder.  It's is processed.
> It's fully incorporated.  It's processed until you can't distinguish the
> asphalt and rubber particles.

(*Id.* at 120).  Morduch's deposition indicates her belief that "homogenous" and "fully incorporated," to use Pelican's attorney's words, "ain't the same animals."   The proposed amended pleading incorrectly alleges that Morduch equated the two.

Pelican also alleges that "Ms. Morduch testified that whether a composition is sprayable has nothing to do with the patentability of claim 11 of the '818 Patent."   (*Id.*, Ex. B, ¶ 47).  The allegation is an incomplete and therefore inaccurate description of what Morduch said.  Morduch testified:

> Q.     . . . You say [the Oliver product is] a sprayable pavement
> binder similar to that of the Huff reference.  Have I read that
> correctly?
>
> A.     Yes.
>
> Q.     All right.  And again, that doesn't have anything to do with
> claim 11 and the patentability of claim 11, does it?
>
> A.     No, but that was a paragraph that was to do with the process
> claims as well as the product claims, and I amended the process
> claims to distinguish that patent.

(*Id.*, Ex. A at 106).  Pelican's proposed amended pleading does not include Morduch's explanation.

Pelican's proposed allegations about how Morduch characterized the other prior art references present similar problems.  Pelican primarily faults Morduch's statements about the Yan and Huff Patents for being incomplete.  Pelican claims that Morduch "drew the Examiner's attention to part of the Yan '554 Patent, and ***away from*** the critical parts that were contrary to her position," specifically, that the Yan patent product contained distillation tower bottoms and asphalt.  (Docket

20

Entry No. 55, Ex. B, ¶ 61 (emphasis in original)).  Pelican alleges that Morduch "**did not disclose a key example in the Huff '049 Patent.**"  (*Id.*, ¶ 72 (emphasis in original)).  Pelican does not allege a basis to find these alleged omissions actionable as inequitable conduct.  Like the Oliver Patent, the Yan and Huff Patents were not so voluminous or complex as to frustrate the examiner's analysis.  Morduch pointed the examiner to Yan and Huff prior art references, and the examiner initially rejected the application based on those references.  Under Federal Circuit precedent, emphasizing aspects of the prior art that favored patentability over that art is not sufficient.

Pelican alleges that in her deposition, Morduch "admits that she 'may not have been right' in her statements" about the Huff Patent.  (*See* Docket Entry No. 55, Ex. B, ¶ 71 (emphasis removed)).  In its motion for leave to amend, Pelican cites the parts of Morduch's deposition testimony on which it relies.  The deposition testimony cited is inconsistent with Pelican's allegations about it.  In her deposition, Morduch addressed only the statement in the remarks that the '818 Patent product was "not sprayable."  She clarified in her deposition that it "may have been incorrect because it must be at some temperature sprayable."  There is no basis to find that this statement, even if "incorrect," was materially false or made with an intent to deceive.  *Exergen*, 575 F.3d at 1328–29; *see also Akzo*, 808 F.2d at 1482 (distinguishing between intent to distinguish prior art to obtain a patent and an intent to deceive about the prior art).  The proposed amended pleading does not identify other statements about the Huff Patent that "may have been incorrect."  The allegations in the proposed amended pleading about Morduch's characterization of the Huff Patent are insufficient to claim inequitable conduct.[4]

---

[4]   The portion of the deposition concerns Morduch's statement in the remarks that "the product is completely different from the claimed composition which is not sprayable."  The relevant portion of the deposition reads:

> Q. . . . So you commented on Huff, your comments on Huff were not directed to claim 11; is that correct?

The allegations of inequitable conduct based on the statement that the prior art was not "homogenous and stable" are also insufficient.  The proposed amended pleading alleges that Morduch "did not know and could not know — . . . whether any of these prior art patents formed an 'incorporated' or 'homogenous and stable' composition — because [Morduch] did not do any testing . . . [or] rely on any other objective evidence."  (Docket Entry No. 55, Ex. B, ¶ 78 ).  As Wright points out, the prosecution history contains no evidence that Morduch told the PTO that she had tested any prior art product or that she had any objective evidence of the homogenous nature of any prior art composition.  Even if the statement was negligently made, the Federal Circuit has held *en banc* that even a grossly negligent misstatement is insufficient to show inequitable conduct. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc);

---

A.  No.  I say the product is completely different from the claimed composition.
      Oh, I'm sorry.  Can I take that back and rephrase it?  Can I rephrase my answer, please?

Q.  Sure.

A.  I believe that I was not correct in saying it's not sprayable, because it must be at some temperature sprayable.

Q.  What's not sprayable?

A.  The product.

Q.  What product?

A.  Oh, sorry.  I said I though that I probably may not have been correct in saying that our, that the claimed product, the claimed composition I said — let me read this again.
      The product is completely different from the claimed composition which is not sprayable.

Q.  We're not there yet.

A.  Oh, I'm sorry.  I thought that's what you were asking.

Q.  Let me — you seem to me to be a little bit confused, and I don't to have your record confused, so let me start my line of questions over on this.

(Docket Entry No. 55, Ex. A. at 95–96).

*accord Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1315–16 (Fed. Cir. 2010); *see also Innogenetics*, 512 F.3d at 1379 (attorney's incorrect statement that the prior art references did not relate to the invention, made without examining those references, provided no basis to find inequitable conduct).

Pelican's proposed allegations also overlook the fact that in her deposition, Morduch specifically identified the basis for the cited statement:

> Q.      . . . Now, how do you know that the [prior] art material is not homogenous and stable?
>
> A.      Because they retain the flexibility, the rubber properties in the product. . . . [O]ur product is fully incorporated and does not have rubbery — the rubbery properties are not retained.  It's fully incorporated, and what you have is a solid that's without particles in it, without properties of the components separately.
>
> Q.      You've never in your life seen a composition made that incorporated — that meets the limitations of claim 11 of the '818 Patent, have you?
>
> A.      No, I have not.

(Docket Entry No. 55, Ex. A at 117–18).  Pelican's allegation that Morduch made statements distinguishing the prior art based on insufficient knowledge is, as a matter of law, insufficient to allege inequitable conduct.

None of the cited statements or omissions, or the deposition testimony about them, provides a basis to allege inequitable conduct.  Pelican's motion for leave to file the proposed amended pleading is denied.

**IV.    Conclusion**

Pelican's motion for leave to amend to file the proposed amended pleading is denied.

SIGNED on May 20, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge